His Honor, EMILE GODCHAUX,
rendered the opinion and decree of the 'Court, as follows:
In 1882, William Dwyer died, leaving a widow and the following minor children: Alice, aged 13, now Mrs. Cohen; Timothy, aged 11; Margaret, aged 10, now Mrs. Lund, and *91 Patrick, aged 5. The only property remaining after paying debts was tbe family home and this was adjudicated to tbe widow at public sale, but bow or when sbe paid for it is not shown.
Tbe eldest boy, Timothy, started working for others when very young .and .apparently continued to do so until be was at least 18 or 20 years old. In 1892, tbe widow received from tbe Federal Government an accumulated back pension .of $210.00 and tberafter until .her death in 1914 continued to receive a monthly pension of from $8.00 to $12.00. In 1893 tbe widow acquired a lot of ground adjoining tbe home for $125.00, on terms of $25.00 cash and the balance on a credit which sbe liquidated finally in small installments. And about that time, or perhaps somewhat before, a dairy was started and conducted upon tbe properties and was continued until 1903, when the live stock, utensils, etc., connected therewith were sold. Tbe license to conduct tbe dairy and tbe .assessment thereof were carried in tbe name of tbe widow, who took active part in tbe business, such as milking the cows, etc., tbe two sons, Timothy .and Patrick, also being engaged with her in tbe work and management, while tbe daughters ¡('.tended to tbe household.
At about the time when tbe dairy was 'sold, sa.y in 1902 or 1903, the business of hauling and drayage was begun upon the premises, and continued in existence during tbe widow’s life, both sons being actively engaged therein, with tbe eldest, Timothy, perhaps more prominent in its management and direction.
Tbe two sons .have always resided upon tbe property. Tbe daughter, Margaret, Mrs. Lund, remained there until some time after her marriage, her son assisting in tbe dairy; but she moved away about 11 years prior to her *92 mother’s death and since her removal does not .appear to have been on friendly terms with her brothers and sister. The other child, Mrs. Alice Cohen, as well as her daughter Catherine, now over 20 years of age, have always lived upon the property with the exception of a period between 1902 and 1912, when Mrs. Cohen lived in Atlanta. And in the meantime the household expenditures as well as the personal necessities of all members of the family residing there were evidently met from the income of the widow and the revenues of the business conducted upon the premises.
When Widow Dwyer died intestate in 1914 as aforesaid, the entire inventory and .appraisement of her estate showed:
Real estate .........................$3,350.00
Contents of residence ............... 62.50
Mules, carts and harness............ 178.50
The grand-daughter, Catherine Cohen, daughter of Mrs-. Alice .Cohen, at once filed an intervention claiming to be the owner, through gift from her grandmother, the decedent, of practically all the furniture of value in the residence, that is, of the total contents, appraised ax $62.50, she lays claim to sundry articles appraised at $55 in the aggregate. The eldest son, Timothy, likewise filed two interventions, in one of which he sets up title to all the mules, carts .and harness, claiming that he was and is the owner of the drayage business .and operated same for his own account. And in his other intervention he demands recognition as a creditor of the estate for $2,-160.00, with interest from 1908, and consisting of money paid and advanced by him in that year, in the sum of $1,402.00 for the repair and reconstruction of the resi *93 dence; in the sum of $605 for the erection of a barn or stable upon the property, and in the sum of $153.00 for paying street paving assessments, etc. In other words, the costs and charges for settling the succession considered, if the intervention of Timotiiy and of his sister’s child be upheld, the entire estate will be absorbed and the other two heirs, Patrick Dwyer and Mrs. Alice Lund, will receive nothing.
All three demands in intervention were tried upon tñe merits and dismissed; but the present appeal is from that judgment alone which denies the claim of Timothy Dwyer to the ownership of the mules, carts and harness employed in the conduct of the drayage business.
The evidence throughout is conflicting and irreconcilable, and, as might have been anticipated, the claimants .whose demands would absorb the estate, testify mutually in favor of one another, while arrayed against them is the testimony of the other two heirs seeking to establish and preserve their interest therein.
And .as illustrating this conflict, it is shown that the dairy, the active work of which was done by the mother as well as by the two sons, was carried on, assessed and licensed in the name of the mother, who on more than one-occasion was arrested and fined for violating municipal ordinances in the conduct thereof. On the other hand, when the dairy was sold, the bill of sale was made in the name of Timothy.
As to the drayage business, which was the outgrowth of the dairy, some, if not all, of the mules and other equipment were purchased in the name of Timothy, and payment for them was likewise made in his name, but urn doubtedly from the revenues of the business. Still it was . all asesssed to Widow Dwyer, who maintained a voice in *94 its management, while the purchases of feed and supplies, as well as contracts and settlements for hauling, etc., were made indifferently in the name of Timothy Dwyer, or of Patrick Dwyer, or of Timothy and Patrick Dwyer. The business cards and bill heads bore the inscription ££T. and P. Dwyer,” while the telephone was carried in the name of Patrick Dwyer, who nevertheless and apparently against his own interest, testifies that the business was neither his, nor his and Timothy’s jointly, but belonged to his mother.
Opinion and decree, January 31st, 1916.
Rehearing refused, March 13,1916.
"Writ refused, April 25, 1916.
It is true that Timothy offers explanation of these incidents which tend to establish ownership of the business in any other than himself; but on the-whole, after "a careful study of the transcript, we aré not satisfied that the trial Court, with its facility of appreciating and determining the credibility of the witnesses, has erred in dismissing his pretentions.
The judgment is accordingly affirmed.
Judgment affirmed.
Claiborne, J., dissents.